USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 05/31/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
:
TRUSTEES OF THE NEW YORK CITY DISTRICT :
COUNCIL OF CARPENTERS PENSION FUND, :
WELFARE FUND, ANNUITY FUND, and :  1:19-cv-02083-GHW
APPRENTICESHIP, JOURNEYMAN :
RETRAINING, EDUCATIONAL AND INDUSTRY : MEMORANDUM OPINION
FUND, TRUSTEES OF THE NEW YORK CITY : AND ORDER
CARPENTERS RELIEF AND CHARITY FUND, :
THE NEW YORK CITY AND VICINITY :
CARPENTERS LABOR-MANAGEMENT :
CORPORATION, and the :
NEW YORK CITY DISTRICT COUNCIL OF :
CARPENTERS, :
:
         Petitioner, :
:
   -against- :
:
TRIED N TRUE INTERIORS LLC, :
:
         Respondent. :
:
-----------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

  The Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund; the Trustees of the New York City Carpenters Relief and Charity Fund; the New York City and Vicinity Carpenters Labor Management Corporation (together, the "Funds"); and the New York City District Council of Carpenters (the "Union," and collectively with the Funds, the "Petitioners") seek to confirm an arbitration award obtained against Tried N True Interiors LLC ("Tried N True" or "Respondent") pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. For the following reasons, the award is confirmed.

I. **BACKGROUND**

In August 2015, Tried N True became a member of the Association of Wall Ceiling & Carpentry Industries of New York, Inc. ("the Association"). Declaration of William Davidian, Dkt. No. 11 ("Davidian Decl."), at ¶ 8. Around the same time, Tried N True also executed a Participation Agreement with the Union, which provides that "the employer agrees to timely contribute to the Funds, at such times specified in the applicable Trust or by the Trustees, at the rate(s) specified in the Applicable Collective Bargaining Agreement for hours worked by a participant . . . ." *Id.* at ¶ 11 & Ex. B, Art. III. The Collective Bargaining Agreement ("CBA"), executed between the Association and the Union, required Tried N True to remit contributions to the Funds for every hour worked by its employees within the trade and geographical jurisdiction of the Union. *Id.* at ¶ 12 & Ex. D, Art. XVI § 1. It also required Tried N True to furnish its books and payroll records when requested by the Funds for the purpose of conducting an audit to ensure compliance with required benefit fund contributions. *Id.* at ¶ 13 & Ex. D, Art. XVI § l(a).

With respect to dispute resolution, the CBA provided that "[s]hould any dispute or disagreement arise between the parties hereto, or between the Union and any employer-member signatory hereto, concerning any claim arising from payments to the Fund[s] of principal and/or interest which is allegedly due, either party may seek arbitration of the dispute before the impartial arbitrator designated hereunder . . . ." *Id.* at Ex. D, Art. XVI § 12.

The CBA also provided that "[t]he arbitrator shall have full and complete authority to decide any and all issues raised by the submission and to fashion an appropriate remedy pursuant to this Agreement including, but not limited to, monetary damages" and that "[t]he arbitrator's award . . . shall be final and binding upon the parties hereto and the individual Employer, if any, and shall be wholly enforceable in any court of competent jurisdiction." *Id.* It also stated that "[t]he cost of the arbitration, including the fees to be paid to the arbitrator, shall be included in the award and shall be borne by the losing party." *Id.*

As was their right under the CBA, the Petitioners attempted to conduct an audit of Tried N True's books and payroll records covering the period of June 29, 2016 through the present to determine whether Tried N True had complied with its contribution requirements. However, a dispute arose when Tried N True refused to submit to the audit. *Id.* at ¶ 19. As a result, the Funds conducted an estimated audit pursuant to the Revised Statement of Policy for Collection of Employer Contributions (the "Collection Policy"), which provides:

> In the event that an employer refuses to permit a payroll review and/or audit upon request by the Fund Office or the Outside Accounting Firms, or if the employer refuses the Outside Accounting Firms access to pertinent records, . . . the Fund Office shall determine the estimated amount of the employer's delinquent contributions based on the assumption that the employer's weekly hours subject to contributions for each week of the requested audit period are the highest number of average hours reported per week for any period of four consecutive weeks during the audit period.

*Id.* at ¶ 19 & Ex. E, § IV ¶ 12.

Pursuant to the CBA, the Funds initiated arbitration. After providing notice to both parties, the arbitrator held a hearing on December 7, 2018. *Id.* at ¶¶ 20, 21 & Ex. F. That same day, the arbitrator issued his award, which noted that Tried N True failed to appear at the arbitration and had failed to make any request for an adjournment or extension of time to appear. *Id.* at Ex. G. The arbitrator found that the "uncontroverted testimony and evidence" established that Tried N True was bound by the CBA and was thus required to comply with the Funds' requested audits. *Id.* The arbitrator determined that Tried N True violated the CBA when it failed to permit an audit covering the period from June 29, 2016 onward and ordered Respondent to pay the Funds the sum of $2,098,611.10 consisting of: (1) estimated principal deficiency of $1,639,910.54; (2) interest of $128,318.45; (3) liquidated damages of $327,982.11; (4) court costs of $400.00; (5) attorneys' fees of $1,500.00; and (6) the arbitrator's fee of $500.00. *Id.* The arbitrator also found that interest of 7% would accrue on the amount of the Award from the date of the issuance of the Award. *Id.*

On March 6, 2019, Petitioners commenced the instant confirmation action, asserting that Tried N True had not satisfied any portion of the arbitral award. *See* Dkt. No. 1. The Court

directed Petitioners to file any declarations and affidavits with which it intended to support its petition by April 5, 2019 and directed Tried N True to file any opposition by April 19, 2019. Dkt. No. 8. Petitioners filed their motion for summary judgment and supporting documents on March 28, 2019. Dkt. Nos. 10-13.

Petitioners served their petition and summons on Tried N True on March 14, 2019. Dkt. No. 7. They served the Court's scheduling order on March 26, 2019, Dkt. No. 8, and they served their motion for summary judgment on March 28, 2019. Dkt. No. 14. Despite being properly served with the petition and summons, Petitioners' motion for summary judgment, and the Court's order establishing deadlines for opposing that motion, Tried N True has not appeared in this action.

## II. DISCUSSION

### A. The Arbitration Award

"Section 301 of the [LMRA], 29 U.S.C. § 185, provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards." *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998). "Confirmation of a labor arbitration award under LMRA § 301 is a summary proceeding that merely makes what is already a final arbitration award a judgment of the Court." *N.Y. Med. Ctr. of Queens v. 1199 SEIU United Healthcare Workers East*, No. 11-cv-04421 (ENV)(RLM), 2012 WL 2179118, at *4 (E.D.N.Y. June 13, 2012) (internal quotation marks omitted).

A court's review of a final arbitration award under the LMRA is "very limited." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016) (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)). Courts are "not authorized to review the arbitrator's decision on the merits . . . but inquire only as to whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement." *Id.* It is not the Court's role to "decide how [it] would have conducted the arbitration proceedings, or how [it] would have resolved the dispute." *Id.* at 537. Instead, the Court's task is "simply to ensure that the

4

arbitrator was 'even arguably construing or applying the contract and acting within the scope of his authority' and did not 'ignore the plain language of the contract.'" *Id.* (quoting *United Paperworks Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)); *see also Local 97, Int'l Bhd. of Elect. Workers v. Niagara Mohawk Power Corp.*, 196 F.3d 117, 124 (2d Cir. 1999) ("Because [t]he federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of [arbitration] awards, an arbitrator's award resolving a labor dispute is legitimate and enforceable as long as it draws its essence from the collective bargaining agreement and is not merely an exercise of the arbitrator's own brand of industrial justice." (citation and internal quotation marks omitted)); *Harry Hoffman Printing, Inc. v. Graphic Commc'ns Int'l Union, Local 261*, 950 F.2d 95, 97 (2d Cir. 1991) ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." (internal quotation marks omitted)). "Generally speaking, unless the award is procured through fraud or dishonesty, the decision should not be disturbed." *Niagara Mohawk*, 196 F.3d at 124.

When a petition to confirm an arbitration award is unopposed, courts should generally treat "the petition and accompanying record . . . as akin to a motion for summary judgment." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006). Thus, like unopposed summary judgment motions, unopposed confirmation petitions "must fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law." *Id.* at 110 (internal quotation marks omitted).

Here, there is no indication that the arbitrator's award was procured through fraud or dishonesty or that the arbitrator was acting in disregard of the CBA or outside the scope of his broad authority to resolve any dispute between the parties regarding contributions. Rather, the record indicates that the arbitrator based his award on undisputed evidence that Tried N True failed to permit the Funds to examine its books and records as required by the CBA and that the Funds

5

conducted an estimated audit in accordance with the terms of the Collection Policy. The record further indicates that the arbitrator based his principal award and his award of interest, liquidated damages, and various costs on the provisions of the CBA and the Collection Policy, as well as undisputed testimony. Accordingly, Petitioners' motion is granted and the award is confirmed.

### B. Post-Award Prejudgment Interest

Petitioners have also requested that the Court award prejudgment interest at the rate of 7%—the post-award rate prescribed by the arbitrator—for the period between the date of the award and the date of judgment in this action. Dkt. No. 1, at 7. The Second Circuit has noted that in the context of actions to confirm arbitral awards there is "a presumption in favor of prejudgment interest." *Waterside Ocean Navigation Co. v. Int'l Navigation Ltd.*, 737 F.2d 150, 154 (2d Cir. 1984). Accordingly, district courts in this Circuit "have exercised their discretion to award prejudgment interest when confirming arbitration awards under collective bargaining agreements pursuant to § 301 of the LMRA, when the CBAs indicated that an arbitration award was 'final and binding.'" *Serv. Employees Int'l Union, Local 32BJ, AFL-CIO v. Stone Park Assocs.*, LLC, 326 F. Supp. 2d 550, 555 (S.D.N.Y. 2004) (collecting cases). Moreover, the arbitrator has already awarded this interest. Davidian Decl., Ex. G at 3. Accordingly, this interest rate will be encompassed within the Court's confirmation of the arbitrator's award.

### C. Attorneys' Fees and Costs

Petitioners also request $2,526.00 in attorneys' fees and $77.50 in costs arising from this confirmation action. *See* Declaration of Nicole Marimon, Dkt. No. 12 ("Marimon Decl."), at ¶¶ 9, 10. Generally, "in a federal action, attorney's fees cannot be recovered by the successful party in the absence of statutory authority for the award." *Int'l Chem. Workers Union, Local No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985). Section 301 of the LMRA does not provide for the recovery of attorneys' fees. *Id.* However, "[p]ursuant to its inherent equitable powers . . . a court may award attorney's fees when the opposing counsel acts 'in bad faith, vexatiously, wantonly, or for

6

oppressive reasons.'" *Id.* (quoting *F.D. Rich Co. v. United States ex rel. Indus. Lumber Co.*, 417 U.S. 116, 129 (1974)). In the context of confirmation proceedings, "the guiding principle has been stated as follows: when a challenger refuses to abide by an arbitrator's decision without justification, attorney's fees and costs may properly be awarded." *Id.* (quoting *Bell Prod. Eng'rs Ass'n v. Bell Helicopter Textron, Div. of Textron, Inc.*, 688 F.2d 997, 999 (2d Cir. 1982)).

Here, an award of fees and costs is justified. By entering into the CBA, Tried N True agreed to submit to arbitration of disputes at the option of either party to the agreement. Tried N True failed to participate in the arbitration proceeding, despite having been duly notified of the hearing. Following the arbitrator's decision that Tried N True violated its obligations under the CBA, Tried N True failed to satisfy any portion of the award and has subsequently failed to oppose the instant petition to confirm the award. In so doing, Tried N True has failed to offer any justification for its refusal to abide by the decision of the arbitrator. *See, e.g.*, *E. Millenium Constr.*, 2003 WL 22773355, at *3 (awarding fees and costs where defendant "chose not to participate in the arbitration proceedings or even to oppose Plaintiffs' application for confirmation of the arbitration award"); *New York City Dist. Council of Carpenters v. Metro Furniture Servs. LLC*, No. 11-cv-7074 (HB), 2012 WL 4492384, at *4 (S.D.N.Y. Sept. 28, 2012) (awarding attorneys' fees and finding that respondent's "inaction in the arbitration hearings and in the present action . . . constitutes bad faith"). Moreover, the CBA includes a provision that allows the Funds to recover reasonable attorneys' fees and court costs upon prevailing in a confirmation action. Davidian Decl., Ex. D, Art. XVI § 11(a). The Funds' Collection Policy further states that "[a]ttorneys' fees shall be assessed against a delinquent employer, at the same hourly rate charged to the Funds for such services . . . for all time spent by Collection Counsel in collection efforts" and that "[a]ll recoverable costs actually incurred in court or other legal actions or the collection of delinquent contributions . . . shall be assessed against the delinquent employer." Davidian Decl., Ex. E at 8-9. Therefore, allowing the Funds to recover reasonable attorneys' fees and costs in the current action aligns with the parties' contractual

7

expectations. Finally, an award of attorneys' fees will further the federal policy in favor of settling labor disputes by arbitration. *See Niagara Mohawk Power Corp.*, 196 F.3d at 124.

In support of their request for fees and costs, Petitioners submitted an invoice listing the completed tasks, attorneys' hourly rates, and billed hours, as well as their costs. Marimon Decl., Ex. H. In total, Petitioners incurred 11.3 hours of legal work at the rates of $350/hour for "of counsel" attorneys, $275/hour for the partner and associate attorneys, and $120/hour for legal assistants. *Id.* at ¶¶ 4-7 & Ex. H. Petitioners' costs consist of process service fees. *Id.* at Ex. H.

The Court has reviewed these contemporaneous records and has determined that the amounts requested are reasonable. Accordingly, Petitioners' request for attorneys' fees and costs is granted.

## III. CONCLUSION

For the foregoing reasons, the Clerk of Court is directed to enter judgment in favor of Petitioners and against Tried N True in the amount of $2,101,214.60—which consists of the arbitration award of $2,098,611.10 plus $2,603.50 in attorneys' fees and costs incurred in the instant action—plus prejudgment interest on the arbitration award at the rate of 7% per annum from the date of the award (December 7, 2018) to the date of judgment. Post-judgment interest will accrue pursuant to 28 U.S.C. § 1961.

The Clerk of Court is further directed to close this case.

SO ORDERED.

Dated: May 31, 2019  
New York, New York

GREGORY H. WOODS  
United States District Judge

8